Booth, J.,
delivered the opinion of the court:
George Herbert Melvin, the claimant herein, was on June 13, 1904, duly appointed a midshipman at the United States Naval Academy. On February 6, 1906, the claimant was dismissed from the academy and from the naval service of the United States. Claimant’s dismissal was the result of a charge of hazing, preferred against him by the superintendent of the academy. The specifications, four in number, Avere: Causing certain midshipmen of the fourth class to stand on their heads, to hang from a locker, to do a physical *216 exercise known as the “sixteenth,” and the use of abusive language to one of said midshipmen. A court-martial, • assembled under the act of June 23, 1874, found all the specifications “ proved ” except the last, and recommended claimant’s dismissal from the academy. The claimant challenges the jurisdiction of the court-martial and sues for the pay and allowances due a midshipman from the date of his dismissal to the time of filing his petition in this cause.
Civil courts are so limited in matters of complaint against the proceedings and sentence of courts-martial that the issue in such cases is narrowed to an inquiry as to the constitution, jurisdiction, and statutory proceeding of the tribunal. (McClaughry v. Deming, 106 U. S., 49.)
Claimant’s right to a judgment rests upon the contention that the act of June 23, 1874, was repealed by the act of March 2, 1895, and both the foregoing statutes amended by the act of March 3, 1903.
Chapter 453 of the act of June 23, 1874 (18 Stat. L., 203), reads as follows:-
“ In all cases Avhen it shall come to the knowledge of the Superintendent of the Naval Academy at Annapolis that any cadet midshipman or cadet engineer has been guilty of the offense commonly known as hazing it shall be the duty of said superintendent to order a court-martial, composed of not less than three commissioned officers, who shall minutely examine into all of the facts and circumstances of the case and make a finding thereon; and any cadet midshipman or cadet engineer found guilty of said offense by said court shall, upon recommendation of said court, be dismissed; and such finding, when approved by said superintendent, shall be final and the cadet so dismissed from said Naval Academy shall be forever ineligible to reappointment to said Naval Academy.”
The act of March 2, 1895 (28 Stat. L., 838), reads as follows:
“The Secretary of the Navy shall have power to convene general courts-martial for the trial of naval cadets, subject to the same limitations and conditions now existing as to other general courts-martial, and to approve the proceedings and execute the sentences of such courts, except the sentences of suspension and dismissal, which, after having been approved by the superintendent, shall not be carried into effect until confirmed by the President.” *
*217 There is no language in the act of March 2, 1895, indicating an intent to supplant the prior statute of June 23, 1874. It has been conceded — in fact, is elementary — that the general principle to be applied by the courts in the construction of statutes is that a general act does not necessarily repeal a prior particular act, unless there is some language expressly doing so or an irreconcilable repugnancy in the two acts standing together. Repeals by necessary implication are not favored in the law, and courts are exceedingly reluctant to nullify a legislative enactment by a subsequent statute wherein the intent so to do is doubtful and ambiguous. The act of June 23', 1874, being the first legislative expression as to the offense of hazing, does by its terms seem harsh and summary. The Congress was dealing with an offense which through successive generations had developed into a code of cruel practices, resulting in personal degradation and inhuman treatment. The enforced discipline of the Naval Academy demanded its eradication and, because of its stealthy character, vested unusual power and authority in' the superintendent of the academy to suppress it.
The act of March 2, 1895, is more general in character. It extends to the Secretary of the Navy concurrent authority to intervene in cases of hazing at the academy and brings courts-martial respecting offenses committed by naval cadets within the law governing all courts-martial. The clause of the statute respecting the enforcement of the sentences of suspension and dismissal, which shall not be effective until confirmed by the President, is insufficient to establish an irreconcilable repugnancy. The foregoing statute is comprehensive, designed to embrace any infraction of military discipline cognizable by courts-martial. Congress very wisely prescribed presidential review and approval, especially so as respects separation from the military service for offenses wherein there may be extenuating circumstances and cause for mitigation of punishment. The statute is not primarily intended to cover a particular offense of an aggravated character, and in the absence of words indicating an express intention to repeal the act of June 23, 1874, can not be so construed.
*218 As to the authority of the President to dismiss naval cadets, see Weller v. United States (41 C. Cls., 324).
The act of March 3, 1903 (32 Stat. L., 1198, ch. 1010), is as follows:
“ That the Superintendent of the Naval Academy shall make such rules, to be approved by the Secretary of the Navy, as will effectually prevent the practice of hazing; and any cadet found guilty of participating in or encouraging or countenancing such practice shall be summarily expelled from the academy, and shall not thereafter be appointed to the corps of cadets or be eligible for appointment as a commissioned officer in the Army or Navy or Marine Corps until two years after the graduation of the class of which he was a member.”
The contention put forward under the above act is predicated upon the absence of rules to prevent the practice of hazing, i. e., that the requirement of rules to prevent hazing necessarily required a rule defining hazing; that hazing is not an offense known to the common or statutory law, and hence only exists as defined by the rules of the Naval Academy. The language of the act- of June 23, 1874, recognized such an offense as hazing and visited extreme penalties for its practice. The court-marital which tried the claimant specified the particular offense he had committed. The act of March 3, 1903, is precautionary, and it can hardly be said that the superintendent in order to prevent should enter into minute detail as to what constitutes hazing. If, perchance, he should omit from the rules prescribed sorne unseemly act committed against the person of a fourth-class man commonly known as “ hazing,” would it preclude punishment therefor because not appearing among the proscriptions of the superintendent?
Hazing has a well-defined meaning; the term is not obscure, and the courts-marital under the law are to determine the question of its commission.
We are unable to discover any inconsistency in the statutes governing this controversy, and the petition is dismissed.